In this action, pursuant to 42 U.S.C. § 2000e et seq., Title VII of the Civil Rights Act of 1964, before the United States Court of Appeals for the Eleventh Circuit, certain pendent Alabama state law claims are presented for review. Because resolution of one pendent claim is dependent upon a question of law of the State of Alabama for which there seems to be no clear controlling precedent under our prior holdings, the Court of Appeals has certified to this Court the following questions:
1. Does the law of the State of Alabama recognize the tort of invasion of privacy in the form described in § 652B,Restatement (Second) of Torts (1977) and set forth below?
 "One who intentionally intrudes physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."
2. If the answer to Question 1 is "yes," must information about the plaintiff's "private activities" actually be acquired through intrusion before the cause of action is established?
3. If the answer to Question 1 is "yes," is communication to third parties of information about a plaintiff's "private activities," obtained as a result of the wrongful invasion, necessary to establish a claim for this form of tortious "invasion of privacy"?
4. If the answer to Question 1 is "yes," must the acquisition or attempted acquisition of information about the plaintiff be undertaken surreptitiously in order for a cause of action to be made out?
5. If the answer to Question 1 is "yes," is an invasion of psychological solitude sufficient to establish the cause of action or is an invasion of a physical place of solitude or seclusion necessary?
6. Do the facts of this case support a claim under Alabama law for "the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities"?
7. If the answer to Question 1 is "yes," are damages recoverable for medical problems, including chronic anxiety, which are causally connected to the wrongful invasion or intrusion?
 FACTS[1]
Plaintiff Brenda Phillips (Phillips) was formerly employed by Defendant Smalley Maintenance Services, Inc. (SMS). SMS and the president and principal owner of SMS, Appellant Ray Smalley (Smalley), were found by the trial judge, after a special advisory verdict by the jury, to have wrongfully discharged Phillips in violation of Title VII for her refusal to engage in sexual activities with Smalley. On this claim, Phillips was awarded lost wages of $2,666.40. The trial judge also found that she had been subject to actionable sexual harassment prior to the wrongful discharge, but that no actual damages arose from this Title VII violation. Pursuant to the exercise *Page 707 
of pendent jurisdiction, the jury found that on one occasion Smalley had touched Phillips without her consent in an angry, hostile or offensive manner and awarded her $10 as nominal damages for common law battery. The jury also found that Smalley had wrongfully intruded into Phillips's private activities so as to cause outrage or mental suffering, shame, or humiliation to a person of ordinary sensibilities. Compensatory damages of $25,000 were awarded on this Alabama state law "invasion of privacy" claim.
Phillips began working as an "overhead cleaner" for SMS on July 30, 1979. SMS provided cleaning, janitorial, and other miscellaneous services at a Monsanto plant in Marshall County, Alabama. Phillips was transferred between jobs of various descriptions, primarily on her request, to avoid sexually oriented discussions with male co-workers.
At trial Phillips testified that within a few weeks of beginning her job, Smalley called her into his office and locked the door. He questioned her about how she was getting along with her husband and told her his wife was ill. The conversation ended when Phillips said she must return to work. A few days later he again called her into his office, locked the door, and this time inquired how often Phillips and her husband had sex and what "positions" they used. Phillips told Smalley it was none of his business and left the office. This form of intrusive interrogation continued two to three times a week. On repeated occasions, calling Phillips away from her work, into his office and locking the door, Smalley asked her whether she had ever engaged in oral sex.
At one time, he invited her to have a drink with him on a Saturday. She refused. In later conversations he insisted that she engage in oral sex with him on penalty of losing her job, upon which he knew she and her family were significantly financially dependent. She consistently resisted his advances. Shortly before the termination of her employment, he again called her into his office, showing anger toward her, beating on his desk, and insisted that she engage in oral sex with him at least three times a week. He then began to cover the window in the office door with paper to prohibit anyone from seeing inside. Phillips forced her way out of the office. As she was leaving, Smalley hit her "across the bottom" with the back of his hand. Phillips testified that this treatment made her nervous and unable to adequately perform her work.
On October 23, 1979, Smalley once more called Phillips into his office and asked her if she was going to show her gratitude to him for hiring her by engaging in certain sexual acts. She again refused. She testified that she was already upset by virtue of having learned the day before that she was possibly going to have surgery. After the incident with Smalley, Phillips said she "tried to work, and . . . got so upset that [she] couldn't." She told her supervisor and Smalley that she was going home early. Smalley asked for her gate pass; she would not give it to him and said she was not quitting the job. The next day her gate pass would no longer work to admit her to the plant.
She then went to see a lawyer, returned to the plant, and talked by phone to Smalley, who brought her pay check. When she asked Smalley why she had been fired, he said she had not been fired but was "laid off," because the work for which she was hired was completed. Testifying at trial, Smalley made it clear that even if she were only "laid off" he had no intention of calling her back when more work was available. The distinction between "laying off" and "firing" in his mind was relevant only to the terminated employee's ability to collect unemployment benefits.
Evidence in the record indicates that all other persons hired at the same time and for the same job as Phillips, except one who voluntarily left, were kept on the payroll in various capacities until May, 1980, when the Monsanto plant closed. Other persons were hired soon after Phillips's termination for positions she was qualified to fill and for which she had indicated an interest. Smalley admitted at trial that Phillips was not *Page 708 
terminated because of poor work performance, but contended that her position had been designated temporary from the beginning and the work for which she was hired had been completed.
The testimony of a family practice physician and of a psychiatrist was introduced at trial to the effect that Phillips experienced chronic anxiety in the months following her termination from SMS. She underwent treatment and was placed on medication. According to her husband, she had contemplated suicide and her relationships with family and friends were disrupted. In addition, she experienced physical problems, basically unrelated to her termination but resulting in surgery. The medical experts, expressing their expert opinion, testified that her anxiety was related to the events surrounding her termination and was not caused by her physical problems.
 INVASION OF PRIVACY IN ALABAMA
Since 1948, beginning with the case of Smith v. Doss,251 Ala. 250, 37 So.2d 118 (1948), Alabama has recognized the tort of "invasion of the right to privacy." See Liberty LoanCorporation of Gadsden v. Mizell, 410 So.2d 45 (Ala. 1982);Hamilton v. South Central Bell Telephone Company, 369 So.2d 16
(Ala. 1979).
It is generally accepted that the invasion of privacy tort consists of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or seclusion;[2] 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use. Norris v. MoskinStores, Inc., 272 Ala. 174, 132 So.2d 321 (Ala. 1961), citing W. Prosser, Law of Torts, pp. 637-39 (2d ed. 1955).
The Norris Court said:
 "We think this analysis fundamentally consistent with our statement in the Doss case and reaffirmed in the Abernathy case, adopted from 41 Am.Jur. 925, that the right of privacy is "`the right of a person to be free from unwarranted publicity," or "the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern or the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.'" [Emphasis added.]"
The parties concede that Plaintiff's action is premised upon that species of the privacy realm known as a "wrongful intrusion into one's private activities." Norris. Despite previous recognition and description of the "wrongful intrusion" tort, we have never, up to now, specifically adopted the language of Restatement (Second) of Torts, § 652B (1977), as the law of this State.
Plaintiff argues that Norris's recognition of "intrusion into one's private activities" is essentially the same as an intrusion "upon the solitude or seclusion of another or his private affairs or concerns," Restatement (Second) of Torts § 652B; and that, by analogy, it can readily be said that our existing case law, in effect, has assimilated § 652B into our body of jurisprudence. Defendants seek to temper the persuasiveness of this argument with a reminder that theRestatement (Second) of Torts, § 652B, is not necessarily authoritative or binding on this Court.
The United States Supreme Court has specifically recognized "marriage" and "sexual" concerns as fundamental rights, entitled to privacy protection. Eisenstadt, Sheriff v. Beard,405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Griswold v.Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510
(1965).
Restatement (Second) of Torts, § 652B, and its Comment, enunciate a clear *Page 709 
and concise definition, and establish the perimeter, of the "wrongful intrusion" tort, which, when read in light of our own case law, affords meaningful guidelines for the adjudication of such actions as alleged by the instant Plaintiff. Consequently, we answer the Court of Appeals' first inquiry in the affirmative.
 THE REQUIREMENT OF "ACQUIRING" INFORMATION ABOUT PLAINTIFF'S PRIVATE ACTIVITIES
The Court of Appeals' second query is as follows: "[M]ust information about the plaintiff's `private activities' actually be acquired through the intrusion before the cause of action is established?"
Defendants argue that because Plaintiff "declined Defendant's invitation and did not answer his inquiries, so no information about Plaintiff's sexual experiences, practices, or inclinations was acquired or disclosed," nothing was "acquired" by Defendant about Plaintiff so as to justify allegations of "wrongful intrusion." We disagree.
Illustration 5 to § 652B finds liability for "wrongful intrusion" or "intrusion upon seclusion" where a photographer makes numerous calls to a person at all times of the day and night, insisting that he be allowed to photograph her. The photographer ignores the lady's pleas that he desist. See, also, Housh v. Peth, 99 Ohio App. 485, 135 N.E.2d 440 (1955);Barnett v. Collection Service Co., 214 Iowa 1303, 242 N.W. 25
(1932); and La Salle Extension University v. Fogarty,126 Neb. 457, 253 N.W. 424 (1934), all of which find liability for invasion of privacy or "intrusion upon seclusion" without any requirement that information be "acquired."
We hold that acquisition of information from a plaintiff is not a requisite element of a § 652B cause of action.
 COMMUNICATION TO THIRD PARTIES ABOUT PLAINTIFF'S PRIVATE ACTIVITIES
Although Defendants vigorously insist to the contrary, we cannot agree that 652B's application must be triggered by some "communication" or "publication" by a defendant to a third party of any private information elicited from a plaintiff. Comment (a) of § 652B, in pertinent part, states, "The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs." Comment (b) goes on to say: "The intrusion itself makes the defendant subject to liability, even though there is no publication. . . ." See Illustration 1-5 for factual contexts in which liability may be found absent any element of "publicity" or "disclosure" to third parties.
In Estate of Berthiaume v. Pratt, 365 A.2d 792 (Me. 1976), a cause of action for invasion of privacy was held stated where the defendant, a physician, had photographed a dying man in his hospital bed, over his objections. The appellate court dismissed as erroneous a trial court's determination that "publication" was necessary for liability, and, quoting an older case, discussed the difference between "libel" and "invasion of privacy."
 "The author of a libel is the creator and there can be no offense until the contents are communicated to another. One cannot invade the rights of another merely by expressing his thoughts on paper. Two persons are necessary. One's right of privacy, however, may be invaded by a single human agency." (Emphasis added.)
Holding, as we do, that "publication" or "communication" is not a necessary element upon which to predicate § 652B liability, we respond to this question in the negative.
 "SURREPTITIOUS" INVASION OF THE RIGHT TO PRIVACY
Defendants argue that, if the claimed invasion of one's right to privacy is the attempted acquisition of information about a plaintiff's private matters or affairs, then it necessarily follows that such attempted acquisition must be made "surreptitiously." We disagree. *Page 710 
While conduct undertaken surreptitiously may form the basis of a different actionable claim, we find no authority for the proposition that this is an element of the "wrongful intrusion" tort. Indeed, no information was obtained surreptitiously inNorris,[3] nor was any information gained surreptitiously inBennett v. Norban, 396 Pa. 94, 151 A.2d 476 (1959), cited by this Court in Norris.
In Bennett, supra, the plaintiff was stopped outside defendant's store by the assistant manager of the store:
 "He put his hand on her shoulder, put himself in position to block her path, and ordered her to take off her coat, which, being frightened, she did. He then said: `What about your pockets?' and reached into two pockets on the sides of her dress. Not finding anything, he took her purse from her hand, pulled her things out of it, peered into it, replaced the things, gave it back to her, mumbled something, and ran back into the store." 151 A.2d at 477.
Although no surreptitious conduct was involved, and no information of the plaintiff's private activities was obtained, the Court held that the plaintiff did have an invasion of privacy action. "The angry performance of defendant's agent was an unreasonable and serious interference with appellant's desire for anonymity and an intrusion beyond the limits of decency." 151 A.2d at 479.
We find untenable Defendants' position that, because Smalley's actions occurred "out in the open," Plaintiff's cause of action should be barred. We decline to hold that "surreptitious" or "clandestine" activities are necessary elements of § 652B liability, and respond to this certified question in the negative.
 INVASION OF "PSYCHOLOGICAL" SOLITUDE OR "PHYSICAL PLACE" OF SOLITUDE
Stated succinctly, the query posed under this heading is the necessity vel non that a defendant invade some "physically defined area or place" as opposed to one's "personality" or "psychological integrity" in order to trigger liability under § 652B. Defendants respond in pertinent part to this question as follows:
 "The word `solitude' essentially means being alone, a concept that obviously embraces the idea of being in a physical location with no one else present. See Webster's Third New International Dictionary, G. C. Merriam Co., 2170 (1971). Indeed, by definition, there probably is no such state as `psychological' solitude apart from physical solitude. The word `seclusion' essentially means shut up or confined, a concept that necessarily includes a physical location. See Webster's Third New International Dictionary, G. C. Merriam Co., 2050 (1971). When solitude and seclusion are further modified in the Norris v. Moskin Stores definition by the word `physical,' there can be no doubt that for the intrusion category of this tort the plaintiff must be in a physical place of solitude or seclusion which the defendant invades. Under this definition an invasion of `psychological' solitude, if such a state exists, is clearly not sufficient."
Section 652B places liability on one who "intentionally intrudes, physically or otherwise" in the proscribed manner. Comment (b) to this section states:
 "The invasion may be physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs window with binoculars or tapping his telephone wires. It may be by some other form of *Page 711 
investigation or examination into his private concerns. . . ." (Emphasis added.)
Applying these principles to the facts at hand, we find that Smalley's intrusive and coercive sexual demands upon Brenda Phillips were such an "examination" into her "private concerns," that is, improper inquiries into her personal sexual proclivities and personality. Defendants' contention that such "invasion" might be actionable if it occurred in one physical location, but not if it occurred in another, does not comport with the theme of the interest protected by this tort cause of action.
Comment (c) states in part:
 "The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." (Emphasis added.)
Comment (c) also points out that the "wrongful intrusion" privacy violation can occur in a public place, when the matter intruded upon is of a sufficiently personal nature:
 "Even in a public place, however, there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters."
In Vernars v. Young, 539 F.2d 966 (3d Cir. 1976), the court held that the plaintiff had stated a cause of action for invasion upon privacy. The plaintiff there alleged that the defendant, a 50% stockholder, officer, and director of a corporation, had opened and read, without plaintiff's consent, mail addressed to the plaintiff (also a stockholder, officer, and director), which had been delivered to the office of their corporation, but addressed to plaintiff and marked "personal." A reasonable expectation of privacy was found to exist, even in this business environment. There was no requirement that some "physical" area be violated.
While in some instances physical location may be a factor in determining whether the alleged intrusion is actionable, the offensive conduct demonstrated by the evidence of record in this case is of such a personal nature that, as Plaintiff suggests, it would be wrongful, and thus actionable, no matter where it occurred.
We disagree with Defendants' assertion that intrusion upon a physical place, analogous to a trespass, must be required before liability may be predicated for a § 652B tort. One's emotional sanctum is certainly due the same expectations of privacy as one's physical environment. We answer this query in the negative.
 THE INSTANT CASE
Do the facts of this case support a claim under Alabama law for "the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities?" We hold they do.
During Plaintiff's tenure with Defendants, she was subjected to intrusive demands and threats, including an inquiry as to the nature of sex between her and her husband. According to testimony, such incidents were occurring two or three times each week. Additionally, we note from Plaintiff's testimony of record the repulsive manner in which Smalley's solicitations were made. On one occasion, he struck her across the buttocks with his hand. On still another occasion, he began papering his office window, thus obscuring the view of those in the surrounding area, in pursuit of what he hoped would be the consummation of lurid propositions to Plaintiff. Smalley, aware of the importance to Plaintiff of her regular income, rendered her, in effect, an "economic prisoner."
We have no hesitancy in expressing our conclusion that these facts meet all the requisite elements contemplated byRestatement (Second) of Torts, § 652B.
 DAMAGES
A plaintiff may recover substantial general damages that naturally and necessarily *Page 712 
flow from the wrongful act, and may also recover all special damages which proximately result from the breach of his privacy. C. Gamble D. Corley, Alabama Law of Damages, §§ 326-38 at 432 (1982). This authority suggests a jury instruction that allows assessment of damages for "mental suffering," "shame or humiliation," and "other damages," and observes that in such cases it is not necessary to plead or prove special damages.
While a negligent tortfeasor is responsible for all injuries which are proximately caused by his tort (Louisville N.R. Co.v. Maddox, 236 Ala. 594, 183 So. 849 (1938)), there is "extended liability" for intentional torts and the rules of proximate causation are more liberally applied than for mere negligence. Shades Ridge Holding Co. v. Cobbs, Allen HallMortgage Co., 390 So.2d 601 (Ala. 1980).
An injury to personality may produce suffering much more acute than that produced by a mere bodily injury. Smith v.Doss, supra. We find unnecessary an elongated recitation of the medical and emotional agitations caused Plaintiff by Defendants' actions. Suffice it to say that the existence and severity of her emotional problems, which required professional treatment, are documented in the record.
We hold that those damages for Plaintiff's medical problems, including chronic anxiety, proximately caused by Defendants' "wrongful intrusion or invasion" are recoverable.
QUESTIONS ANSWERED.
All the Justices concur except FAULKNER and ALMON, JJ., not sitting.
[1] These facts are adopted essentially from the Court of Appeals' factual summary, submitted as part of its certified question.
[2] While our focus is primarily upon the definition of "Intrusion upon Seclusion," encompassed by Restatement (Second)of Torts § 652B (1977), the Smith v. Doss decision, supra, discussed this topic pursuant to the definition set forth inRestatement of Torts § 867 (1939), a definition which, because of its similarity with that in Restatement (Second) will not be repeated here.
[3] Defendants attempt to distinguish the present case fromNorris on the basis that Norris was a "debt collection" case, as opposed to a "wrongful intrusion" tort. Neither theRestatement (Second) of Torts, nor established case authority, recognizes "debt collection" cases as a separate category of invasion of privacy.