INGRAM, Justice.
J.C. and C.C., as the parents and next friends of S.E.C., a minor, sued WALA-TV, Inc. (“WALA”), after WALA televised a report containing information regarding S.E.C. The parents asserted, among other claims, that WALA’s broadcast of that information constituted an invasion of privacy. The trial court entered a summary judgment for WALA on all claims. The parents appeal that judgment as it pertains to the invasion-of-privacy claim.
The evidence in this case, viewed in a light most favorable to the parents, see Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993), suggests the following:
S.E.C., who was 15 years old at the time of the broadcast in question, had a history of problems at home, including frequently running away from her home in Theodore, Alabama. In February 1994, she again ran away from home and, without her parents’ knowledge, began to reside on South Hallett Street in Mobile. The parents contacted juvenile authorities in Mobile in their attempts to locate S.E.C., but their attempts were without success. While living on South Hal-lett Street, S.E.C. acquired a puppy, which she named “Gucci.” On May 19, 1994, Gucci was hanged, beaten, and severely burned by several persons in the South Hallett Street neighborhood. The vicious attack on the puppy was the subject of extensive news media coverage in Mobile and the rest of the state.[1]
On May 23, 1994, WALA employees learned that S.E.C. was Gucci’s owner. On that day, Carol Hunter, a news reporter with WALA, met with S.E.C. on South Hallett Street and taped an interview with her concerning the attack. During the interview, a carload of men stopped nearby and yelled threats and racial epithets toward S.E.C. Members of the group threatened to burn the house where she was residing if she gave their names to the police. WALA’s cameras captured the-incident on tape. That afternoon, S.E.C. telephoned her mother and told her that she would be featured on the newscasts of WALA and another television station. The mother then telephoned WALA and informed a station manager, John Armand, that S.E.C. was a runaway. Armand gave her information regarding S.E.C.’s whereabouts, and the mother telephoned the Mobile County Sheriffs Department. The Mobile Police Department apprehended S.E.C. and took her to the Strickland Youth Center, a juvenile facility.
In its 5:00 and 6:00 p.m. news broadcasts on May 23,1994, WALA televised portions of the interview, identifying S.E.C. by name and including the threats made by the group. In its 10:00 p.m. broadcast, WALA described her as a 15-year-old runaway and stated that she had been taken to the Strickland Youth Center. The same report was televised twice on the following day.
The parents contend that WALA’s broadcast of the information concerning S.E.C.’s. identity, her runaway status, and her detention at the Strickland Youth Center constituted an invasion of privacy.
The tort of invasion of privacy has been defined as the wrongful intrusion into one’s private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala.1983). In *362 Smith v. Doss, 251 Ala. 250, 37 So.2d 118 (1948), the right to privacy was described in part as “ ‘the right of a person to be free from unwarranted publicity’ or ‘the unwarranted appropriation or exploitation of one’s personality, the publicizing of one’s private affairs with which the public has no legitimate concern.’ ” 251 Ala. at 252-53, 37 So.2d at 120, quoting 41 Am.Jur. 925. The Smith Court held that the broadcast of matters of “legitimate public interest” is not prohibited by the right to privacy. 251 Ala. at 253, 37 So.2d at 121. The broadcast of those matters is not obstructed by the right to privacy, because of the interest of the public in being informed. Daily Times Democrat v. Graham, 276 Ala. 380, 162 So.2d 474 (1964).
The First Amendment to the United States Constitution requires that we recognize a privilege in regard to the invasion of privacy, where the alleged invasion concerns publicity. See Campbell v. Seabury Press, 614 F.2d 395, 396 (5th Cir.1980). Recognizing this Court’s holding in Smith v. Doss, supra, the Court of Appeals for the Fifth Circuit noted in Campbell the existence of a privilege that applies to the publishing or broadcasting of information concerning public figures. A second privilege noted by the Campbell court, more important to our analysis of the instant case, is the privilege to publish or broadcast news or other matters of legitimate public interest, as stated in Smith v. Doss. The Campbell court stated:
“[T]he inquiry in determining the applicability of the [legitimate public interest] privilege focuses on the information disclosed by publication and asks whether truthful information of legitimate concern to the public is publicized in a manner that is not highly offensive to a reasonable person. This [legitimate public interest] privilege is not merely limited to the dissemination of news either in the sense of current events or commentary upon public affairs. Rather, the privilege extends to information concerning interesting phases of human activity and embraces all issues about which information is needed or appropriate so that individuals may cope with the exigencies of their period.”
614 F.2d at 397.
In accord with the First Amendment to the United States Constitution is Art. I, § 4, of the Alabama Constitution of 1901, which states: “[N]o law shall ever be passed to curtail or restrain the liberty of speech or of the press; and any person may speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that liberty.”
After reviewing the record, we hold that the broadcasts of which the parents complain did not constitute an actionable invasion of privacy; therefore, the trial court correctly entered the summary judgment on this claim. The public had a legitimate concern as to S.E.C.’s status and whereabouts, after having heard the threats made against her during her television interview. The story of Gucci and the circumstances surrounding his attack were of great interest to the Alabama public. When the viewers of WALA’s newscast witnessed S.E.C.’s being threatened by the group shortly after the Gucci attack, they undoubtedly became aware of the danger of a similar attack on S.E.C. WALA’s reports identifying S.E.C., describing her as a runaway, and informing the public that she was safe in custody at the Strickland Youth Center were truthful and were of legitimate concern to the public. Campbell, supra. The broadcast, being one concerning matters of legitimate public interest, was not an improper intrusion into private activities and therefore was not actionable under our tort law as an invasion of privacy. Phillips, supra. Because WALA’s conduct in this case falls within the bounds of the “legitimate public interest” privilege, we need not determine whether S.E.C. was a public figure for purposes of the “public figure” privilege. Campbell, supra.
The summary judgment in favor of WALA is affirmed.
AFFIRMED.
HOOPER, C.J., and ALMON, HOUSTON, and BUTTS, JJ., concur.

. Gucci survived the attack. The record indicates that Gucci was later given to a person who had taken care of him after the attack,