Cindy Cunningham appeals from a summary judgment in favor of the defendant in her action alleging invasion of privacy, outrageous conduct, and wrongful termination of employment.
Cunningham was employed at ENT Clinic, P.A., where she worked for Dr. Jack M. Dabbs. Dabbs terminated Cunningham's employment on June 10, 1994. On February 28, 1995, Cunningham sued Dabbs, alleging invasion of privacy, defamation, and outrageous conduct in connection with her discharge. On June 7, 1996, Cunningham amended her complaint to assert a claim of wrongful discharge. Dabbs filed a motion for a summary judgment, which the trial court granted. Cunningham appealed to the Supreme Court, which deflected the case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
The evidence submitted to the trial court indicated the following: Cunningham began working at ENT Clinic in 1981. In 1987, when her youngest child was born, Cunningham quit her job at ENT Clinic. She returned to work at ENT Clinic in January 1992. Cunningham testified in her deposition that, during her employment at ENT Clinic, Dabbs frequently rubbed her shoulders and repeatedly made lewd and suggestive comments to her, including suggestions that they have sex, that they should "slip off and go skinny-dipping," that he "[knew] of a better way of getting hot and sweaty that we could enjoy," that he would take her hunting and "we'll find more to do than just wait on a deer to come by," and that he told her "just because you sleep with someone does not mean you have to marry them." She stated that, while out to lunch with a group from work, Dabbs had said that he would fire her if she got married again, but that she thought he was joking. Cunningham also *Page 981 
testified that approximately two weeks before Dabbs fired her, he leaned over her as if he were going to whisper something to her and stuck his tongue in her ear.
Cunningham also testified that, on June 10, 1994, she was discussing her marriage plans with several other employees when Dabbs entered the room. Upon learning that she was getting married, Dabbs informed her that she was fired. When she laughed, Dabbs said that he was serious and that she could leave immediately or she could work for two more weeks. Cunningham left work and got married that evening. In his motion for a summary judgment, Dabbs did not dispute any of Cunningham's allegations, nor did he deny that he fired her because she was getting married. Cunningham argues that the trial court erroneously entered a summary judgment as to her claims of wrongful termination, invasion of privacy, and outrageous conduct because, she contends, she presented substantial evidence creating genuine issues of material facts that required submission to a jury.
A summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P.; Bussey v. JohnDeere Co., 531 So.2d 860, 862 (Ala. 1988). The party moving for a summary judgment must present, in support of its motion, evidence that would be admissible at trial. Rule 56(e), Ala.R.Civ.P. When the moving party makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmoving party to rebut the showing by presenting substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is "of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). On review of the trial court's judgment, we are required to view the record in a light most favorable to the nonmovant and to resolve all reasonable doubts in favor of the nonmovant.Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413
(Ala. 1990).
As for Cunningham's wrongful termination claim, Alabama law retains the general rule that an "at-will" employment contract may be terminated at any time by either party, with or without cause or justification. Hinrichs v. TranquilaireHospital, 352 So.2d 1130 (Ala. 1977). Thus, employment may be terminated for "a good reason, a wrong reason, or no reason."Id. at 1131 (emphasis in original). Our supreme court has declined to create "public policy" exceptions to this general rule. Id.; Howard v. Wolff Broadcasting Corp., 611 So.2d 307
(Ala. 1992), cert. denied, 507 U.S. 1031, 113 S.Ct. 1849,123 L.Ed.2d 473 (1993). In Howard, the employee, a female who was fired because of her gender, argued that the court should adopt an exception to the "at-will" doctrine based on principles of nondiscrimination. The court stated,
 "In refusing to adopt a 'public policy' exception, we should not be understood as condoning a person's discharge because of gender. We merely hold that it is the province of the legislature to create such an exception, if it should determine that employees such as Howard, . . . should be given the right to sue for damages."
Howard, supra, at 313. See also, Dykes v. Lane Trucking, Inc.,652 So.2d 248 (Ala. 1994).
Cunningham argues that terminating a person's employment based on the exercise of the fundamental right to marry so violates public policy as to support a claim for wrongful discharge. However, the parties agree that Cunningham was an "at-will" employee. Based on the above precedent, we hold that Dabbs's conduct, as reprehensible as it might have been, cannot support a claim for wrongful discharge in an "at-will" employment situation. Therefore, the summary judgment is due to be affirmed as to Cunningham's wrongful termination claim.
Cunningham also argues that she presented substantial evidence in support of her invasion of privacy claim. The tort of invasion of privacy encompasses four types of conduct: 1) the intrusion upon one's physical *Page 982 
solitude or seclusion, 2) publicity that violates the ordinary decencies, 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye, and 4) the appropriation of the plaintiff's personality for commercial use. Phillips v. Smalley Maintenance Services Inc.,435 So.2d 705 (Ala. 1983) (citing W. Prosser, Law of Torts, pp. 637-39 (2d ed. 1995)). This case falls under the "intrusion upon seclusion" category, which has been further defined as "the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." Phillips,supra, at 708; Restatement (Second) of Torts § 652B (1977). Our Supreme Court stated in Phillips, "[s]ection 652B places liability on one who 'intentionally intrudes, physically or otherwise' in the proscribed manner." Phillips, supra, at 710. The court further held that "[o]ne's emotional sanctum is certainly due the same expectations of privacy as one's physical environment." Id. at 711. Additionally, the United States Supreme Court has recognized "marriage" and "sexual concerns" as fundamental rights entitled to privacy protection.Id. at 708 (citing Eisenstadt, Sheriff v. Baird, 405 U.S. 438,92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); and Griswold v.Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510
(1965)).
Dabbs argues that the facts of the present case make it distinguishable from Phillips. In Phillips, the court held that an employer was liable for invading the privacy of an employee based on the employer's conduct:
 "[The employee] was subjected to intrusive demands and threats, including an inquiry as to the nature of sex between her and her husband. . . . [S]uch incidents were occurring two or three times each week. Additionally, we note from Plaintiff's testimony the repulsive manner in which Smalley's solicitations were made. On one occasion, he struck her across the buttocks with his hand. On still another occasion, he began papering his office window, thus obscuring the view of those in the surrounding area, in pursuit of what he hoped would be the consummation of lurid propositions to Plaintiff. Smalley, aware of the importance to Plaintiff of her regular income, rendered her, in effect, an 'economic prisoner.' "
Phillips, supra, at 711.
Dabbs contends that his conduct was not as severe as that involved in Phillips because, he argues, he did not make "coercive sexual demands upon [Cunningham that were] such an 'examination' into her 'private concerns,' that is, improper inquiries into her personal sexual proclivities and personality," Id. Thus, he argues, he did not commit the tort of invasion of privacy. We reject this argument. We decline to decide the extent or frequency of humiliation and offensive behavior that a person must endure before he or she may recover for invasion of privacy. We do determine that, like the defendant's behavior in Phillips, Dabbs's behavior was "offensive . . . and of such a personal nature that . . . it would be wrongful, and thus actionable, no matter where it occurred." Id. See also Busby v. Truswal Systems Corp.,551 So.2d 322 (Ala. 1989) (reversing a summary judgment for the employer on an invasion of privacy claim when plaintiffs' supervisor had made lewd comments and sexual advances toward plaintiffs).
The evidence discloses offensive behavior by Dabbs, including sexual propositions and inappropriate physical contact. A reasonable jury could determine that Dabbs unreasonably intruded into Cunningham's private affairs; therefore, we hold that whether this conduct was severe enough to constitute an invasion of Cunningham's right to privacy is a question of fact to be determined by a jury.
Cunningham also argues that the trial court erred in entering a summary judgment on her outrage claim. Our Supreme Court first recognized this tort in American Road Service Co.v. Inmon, 394 So.2d 361, 364 (Ala. 1981), in which it stated that "an employer, by virtue of his position, possesses no roving license to treat his employee in an extreme and outrageous manner, whether before, during, or after their relationship." Thus, the court held that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability" and that "the emotional distress thereunder must *Page 983 
be so severe that no reasonable person could be expected to endure it. . . . By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id. at 365 (citations omitted).
Dabbs argues that his conduct constituted "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," which will not support a claim of outrage.Inmon, supra, at 365.
In an analogous case, an employer's conduct that was aimed at forcing a pregnant employee to leave her job and the employer's subsequent termination of her employment because of her pregnancy was determined to present facts that could lead a reasonable jury to conclude that the employer had committed the tort of outrage. Rice v. United Ins. Co. ofAmerica, 465 So.2d 1100, 1102 (Ala. 1984). In Rice, the court noted that, among other things, the employee alleged a pattern of harassment that lasted for several months and that the conduct was directed toward the illegal purpose of violating the employee's federally protected right to be free from discrimination based on sex. Id. Cunningham alleges a pattern of harassment and a termination of employment in violation of her fundamental right to marry. See, Zablocki v. Redhail,434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (recognizing the right to marry as fundamental to all individuals). This is not a case in which the employee seeks to assert that the employer is guilty of outrageous conduct for merely discharging an at-will employee, which will not support a claim of outrage.Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986). While the facts of this case are in some ways unlike those inRice, we note that no precise formula can establish what conduct will be deemed "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized society."Inmon, supra. A reasonable jury could determine that Dabbs's conduct exceeded the bounds of decency established by civilized society; that is what is required for Cunningham to support her outrage claim. Therefore, we hold that the trial court erred by entering the summary judgment as to the outrage claim.
The summary judgment is affirmed as to Cunningham's wrongful discharge claim. It is reversed as to the invasion-of-privacy and outrage claims, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and THOMPSON, J., concur.
YATES and CRAWLEY, JJ., concur in part and dissent in part.