W. David SHOWS, Plaintiff,

v.

Joe Eddie MORGAN, et al., Defendants.

No. Civ.A. 98–T–914–N.

United States District Court, M.D. Alabama, Northern Division.

March 17, 1999.

Arlene M. Richardson, Hayneville, AL, J. Clay Benson, Jr., Paul D. Esco, Montgomery, AL, for plaintiff.

William R. Chandler, Kendrick E. Webb, Pamela Robinson Higgins, Webb & Eley, P.C., Montgomery, AL, for defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff W. David Shows, who is white, has brought this lawsuit against three defendants: the Town of Hayneville, Alabama; the town's mayor, Joe Eddie Morgan, an African–American; and one of the town's police officers, Gerald Tippins, who is also an African–American. Shows alleg-

es that the defendants conspired to deprive him of his civil rights by refusing to appoint him permanently as Police Chief of Hayneville because of his race, and by conducting a defamatory campaign against him, culminating in his wrongful removal from the position of Acting Police Chief. Shows bases his lawsuit on the following: the due-process and equal-protection clauses of the fourteenth amendment to the United States Constitution, as enforced through 42 U.S.C.A. § 1983; the Civil Rights Act of 1866, as amended, 42 U.S.C.A. § 1981; the Declaratory Judgment Act of 1934, 28 U.S.C.A. § 2201; and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17. He also asserts state-law claims for libel and slander, invasion of privacy, and civil conspiracy. Shows has properly invoked the jurisdiction of the court pursuant to 28 U.S.C.A. § 1331 (federal-question), 28 U.S.C.A. § 1343(a)(4) (civil rights), 42 U.S.C.A. § 2000e–5(f)(3) (Title VII), and 28 U.S.C.A. § 1367(a) (supplemental jurisdiction). Shows seeks injunctive relief, including reinstatement, and compensatory and punitive damages.

Currently, this lawsuit is before the court on a motion, filed by the defendants under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), seeking the dismissal of Shows's claims as follows: his Title–VII claim for failure to exhaust administrative remedies; his § 1981 and § 1983 claims for failure to state a claim, failure to allege that state-law remedies are inadequate, and as barred by qualified immunity and the applicable statute of limitations; and his state-law claims for failure to state claim, failure to comply with the applicable notice-of-claim statute, and as barred by discretionary-function immunity and the applicable statute of limitations. For the reasons that follow, the court concludes that the motion to dismiss should be granted in part and denied in part.

1. Shows's Complaint, filed August 18, 1998, ¶ 6.

2. *Id.* ¶ 7.

## I. *FACTUAL SUMMARY*

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, *see* Fed.R.Civ.P. 12(b); *Andreu v. Sapp,* 919 F.2d 637, 639 (11th Cir.1990), and construes the complaint liberally in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The facts as stated by Shows are as follows. Shows served as Acting Police Chief of Hayneville for approximately ten months in 1996, pending the selection of someone to fill the position permanently.[1] In September 1996, the town advertised the position of Police Chief. Only two persons applied: Shows and another white candidate.[2]

A town council meeting was held on December 9, 1996, to interview applicants. Because Shows and the other candidate were not notified of the meeting, neither attended. On December 12, another council meeting was held to interview candidates. It is unclear from the record whether Shows or the other candidate was informed of this meeting or attended it. However, at a third meeting held on December 19, the town council interviewed Andre Porter, an African–American.[3]

In the months leading up to this meeting, Police Officer Tippins told unidentified persons that Shows had been convicted of burglary, that Shows had a "rap sheet" which was in Tippins's possession, and that Tippins "would personally see David Shows behind bars" for his participation in stealing drug money.[4] Officer Tippins further accused Shows of hiding his criminal record and, with the consent of Mayor Morgan, changed the name-plate on Shows's desk from "Chief Shows" to "Thief Shows."[5] In addition, Mayor Morgan searched Shows's evidence cabinet and his

3. *Id.* ¶¶ 8–10.

4. *Id.* ¶¶ 14–15.

5. *Id.* ¶ 18.

mail for information with which to attack him.[6]

At the December 19 meeting, the town council voted against Shows and, instead, selected Porter to be the permanent Police Chief. Only four of the five council members were present—three African–Americans and one white person—and the vote of the council was as follows: two African–American persons voted against Shows, and one African–American person and the one white person voted for Shows. Due to the absence of the fifth council member, Mayor Morgan cast the deciding vote against Shows, stating that he "could not work with Mr. Shows." [7]

Shows was more experienced than Porter, and he had a "stellar" record at his job, a high success-rate of solving crimes, and a good rapport with the community in general.[8] Porter was a less-qualified candidate for the job; he was less reliable, and the Montgomery Police Department fired Porter from his job twice for insubordination and for untruthfulness.[9] Shows claims that the town council removed him from his job as Acting Police Chief and denied him the job of permanent Police Chief for racially discriminatory reasons.[10]

## II. *DISCUSSION*

### A. *Federal Claim: Title VII*

▮ Shows admits that he failed to file a claim with the Equal Employment Opportunity Commission, and that his Title VII claim is due to be dismissed.[11] The defendants' dismissal motion is therefore granted to this extent.

### B. *Federal Claims: §§ 1983 and 1981*

As stated, Shows has named as defendants two town officials and a municipality in his § 1983 and § 1981 claims. The two town officials are sued in both their individual and official capacities.

### 1. *Mayor Morgan in His Individual Capacity*

▮ Mayor Morgan, to the extent he has been sued in his individual capacity for violating § 1983 and § 1981, has raised the affirmative defense of qualified immunity. The doctrine of qualified immunity insulates government agents against personal liability for money damages for actions taken in good faith pursuant to their discretionary authority. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982); *Greason v. Kemp*, 891 F.2d 829, 833 (11th Cir. 1990). As established by the Supreme Court in *Harlow*, the test for "good faith" or qualified immunity turns primarily on the objective reasonableness of the officials' conduct in light of established law: "governmental officials ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. Where the law that the defendants allegedly violated was not clearly established at the time of the alleged offense, the defendants are entitled to qualified immunity. *See id.* at 807, 102 S.Ct. at 2732; *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1503 (11th Cir.1990). If the law was clearly established, however, the immunity defense will fail since "a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

▮ The Eleventh Circuit follows a two-step analysis to determine whether a public official is entitled to qualified immunity. *See Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir.1992). First, the defendant must prove that he was acting within the scope of his discretionary

---

6. *Id.* ¶ 20.

7. *Id.* ¶ 10.

8. *Id.*

9. *Id.*

10. *Id.* ¶ 13.

11. Answer to Defendants' Motion to Dismiss, filed December 1, 1998, ¶ 1.

authority at the time of the allegedly unconstitutional conduct. *See id.* Once this is shown, the burden shifts to the plaintiff to prove that the defendant's actions violated clearly established statutory or constitutional law. *See id.; Busby v. City of Orlando,* 931 F.2d 764, 773 (11th Cir.1991); *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1322 (11th Cir.1989).

The Supreme Court recently indicated that "normally," before addressing qualified immunity, the "better" approach is "to [first] identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis,* 523 U.S. 833, —— n. 5, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998); *see also Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all," and courts should not "assum[e], without deciding, this preliminary issue."). *But see Santamorena v. Georgia Military College,* 147 F.3d 1337, 1343 (11th Cir.1998) (holding that, "(1) where the existence of a constitutional right (or duty) presents a perplexing question, (2) where the alleged right obviously was not already clearly established, and (3) where the qualified immunity determination does end the whole case," *Lewis* does not prohibit the. court from first considering a qualified-immunity defense). The Supreme Court preferred this mode of analysis because "[a]n immunity determination, with nothing more, provides no clear standard [for official conduct], constitutional or non-constitutional." *Id.* Thus, though the *Lewis* approach contradicts "the generally sound rule of avoiding determination of constitutional issues," in a "normal" case, such as this, the trial court may clarify standards of official conduct which would otherwise "tend to remain uncertain, to the detriment both of officials and individuals." *Id.*

■■ If the court determines that the plaintiff has not alleged a deprivation of a constitutional right, then the inquiry is over, for it would follow perforce that such right was not clearly established. *See Lewis,* —— U.S. at —— n. 5, 118 S.Ct. at 1714 n. 5. However, if the court determines that the plaintiff has, in fact, alleged a deprivation of a constitutional right, then further inquiry is needed as to "whether that right allegedly implicated was clearly established at the time of the events in question, *id.;* and, of course, the violation of the clearly established right must be self-evident from the factual allegations set forth by the plaintiff in his complaint. *See Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir. 1988).

■ In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Lowe v. Aldridge,* 958 F.2d 1565, 1570 (11th Cir.1992) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law, the unlawfulness must be apparent." *Id.* In determining the state of the law, this court must look to "the law originating in [the Eleventh] Circuit, as well as the Supreme Court, the courts of appeals, and the district courts." *Leeks v. Cunningham,* 997 F.2d 1330, 1333 (11th Cir.), *cert. denied,* 510 U.S. 1014, 114 S.Ct. 609, 126 L.Ed.2d 573 (1993); *Greason,* 891 F.2d at 833. Therefore, for Shows to defeat the defendants' request for dismissal on qualified immunity grounds, he must show that the right he is claiming was "clear, factually-defined, [and] well-recognized" at the time of the defendants' conduct. *Dartland,* 866 F.2d at 1321; *see also Bates v. Hunt,* 3 F.3d 374, 379 (11th Cir.1993). The court will thus examine the law as it applied to Shows's complaint at the time of

the alleged violations, which occurred from September to December 1996.

### a. § 1983 Claims: Due Process and Equal Protection

██ Section 1983 permits an individual to obtain legal redress for a violation of his constitutional rights by a state actor. It is not, by itself, a source of substantive federal rights. It "merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979). To sustain a claim under § 1983, a plaintiff must allege facts showing that the "conduct complained of was committed by a person;" that the person was "acting under color of state law;" and that "this conduct deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981); *see also Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992).

### i. Due–Process Claim

██ The due-process clause of the fourteenth amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The due-process clause "provides two different kinds of constitutional protection: procedural due process and substantive due process." *McKinney v. Pate,* 20 F.3d 1550, 1555 (11th Cir.1994) (en banc), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995). "A violation of either of these kinds of protection may form the basis for a suit." *Id.* Although Shows does not specify under which kind of protection he is proceeding, it appears from his allegations that he is attempting to invoke both theories. The court will, therefore, analyze Shows's claims under both the substantive and procedural theories of the due-process clause.

██ *Procedural Due Process:* To succeed on a procedural-due-process claim, as applied through § 1983, a plaintiff must show, first, that he possesses a protected property or liberty interest, *see Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), second, that a state or federal actor has deprived him of that right, *see id.;* and, finally, that he has not been accorded a hearing prior to his deprivation of that right, *see id.* at 570, 92 S.Ct. at 2705, or that the hearing was fundamentally unfair. *See Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) ("It is ... fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner'").

██ An employee is entitled to procedural due process if he has a property interest in his position. *See Bishop v. Wood,* 426 U.S. 341, 343–47, 96 S.Ct. 2074, 2076–2079, 48 L.Ed.2d 684 (1976). A property interest exists if an employee has "an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982); *see also Warren v. Crawford,* 927 F.2d 559, 561 (11th Cir. 1991). Such claim can exist through a "mutually explicit understanding" with the employer that "support[s] a claim of entitlement." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). A unilateral expectation of continued employment does not suffice. *Bishop,* 426 U.S. at 345–347, 96 S.Ct. at 2077–2079. The law is well established, therefore, that if Shows had such a right, he could not be deprived of it by the Town of Hayneville without due process. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Memphis Light,* 436 U.S. at 11–12, 98 S.Ct. at 1561–62; *Roth,* 408 U.S. at 576–78, 92 S.Ct. at 2708–09.

██ Shows relies on Alabama law as the basis for his property interest. Un-

der Alabama law, a state employee must demonstrate that his employment is "permanent" or terminable only for cause to demonstrate a constitutionally cognizable property interest. *See Green v. City of Hamilton Housing Auth.*, 937 F.2d 1561, 1564 (11th Cir.1991). Here, it is clear that Hayneville's offer of employment was not permanent, but rather was explicitly a temporary, interim offer. There was simply no offer of permanent employment: Shows was one of three candidates for the permanent job of Police Chief. Shows, as Acting Police Chief, had no property right to continued employment. Mayor Morgan and Police Officer Tippins did not deprive him of that right, and no pre-deprivation hearing was required.

The court having determined that Shows has not alleged a deprivation of a procedural-due-process right, the inquiry is over—for it follows perforce that such right was not clearly established. *See Lewis*, 523 U.S. at —— n. 5, 118 S.Ct. at 1714 n. 5. Shows's procedural-due-process claim therefore fails.

Because Show's procedural-due-process claim fails, the court need not reach Mayor Morgan's contention that Shows has failed to allege that state-law remedies are inadequate. *See Tinney v. Shores*, 77 F.3d 378, 381–382 (11th Cir.1996).

■ *Substantive Due Process:* The nature of Shows's substantive-due-process claim is unclear, but it appears that he is relying on old Eleventh Circuit law which recognized a substantive-due-process violation when "an employer deprives the employee of a property interest for an improper motive and by means that [are] pretextual, arbitrary and capricious, regardless of whether or not a hearing was held." *Nolin v. Douglas County*, 903 F.2d 1546, 1553–54 (11th Cir.1990) (internal quotation marks omitted). However, in an en banc holding in *McKinney v. Pate*, the Eleventh Circuit Court of Appeals expressly overruled this law and limited the concept of substantive-due-process to rights "that are 'fundamental,' that is,

rights that are 'implicit in the concept of ordered liberty.'" 20 F.3d at 1556 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325–326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)). *See also Lewis*, 523 U.S. at ——, 118 S.Ct. at 1717 ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty'") (quoting *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987) (quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209–210, 96 L.Ed. 183 (1952), and *Palko*, 302 U.S. at 325–326, 58 S.Ct. at 152)). In the face of *McKinney v. Pate*, Shows's substantive-due-process claim must fail.

In his complaint, Shows appears to charge Mayor Morgan with defamation in violation of § 1983.[12] However, at the pretrial conference held on February 25, 1999, Shows indicated that he was resting his defamation claim solely on state law and was no longer asserting a defamation claim under § 1983. The court, therefore, views this substantive-due-process claim as withdrawn.

Accordingly, the court having determined that Shows has not alleged a deprivation of a substantive-due-process right, the inquiry is over—for, as with his procedural-due-process claim, it follows perforce that such right was not clearly established. *See Lewis*, 523 U.S. at —— n. 5, 118 S.Ct. at 1714 n. 5.

### ii. *Equal–Protection Claim*

Under the equal-protection clause of the fourteenth amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "The central purpose of the Equal Protection Clause . . . is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976).

12. *See* Shows's Complaint, filed August 18, 1998, ¶ 14.

In order to succeed under the equal-protection clause, Shows must demonstrate that Mayor Morgan, acting under color of law, purposely discriminated against him on the basis of his race when declining to appoint him permanent Chief of Police.[13] *See Harris v. Conradi,* 675 F.2d 1212, 1217 (11th Cir.1982); *see also Washington v. Davis,* 426 U.S. at 239, 96 S.Ct. at 2047; *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 264–265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977)). The equal-protection clause differs from the procedural aspect of the due-process clause in both the type of right protected and the manner in which an individual may be deprived of that right. Under the due-process clause, a state actor may deprive an individual of constitutionally protected liberty and property rights only after a "meaningful" hearing. *See Fuentes,* 407 U.S. at 80, 92 S.Ct. at 1994. Under the equal-protection clause, a state actor may deprive an individual of a legally protected right only if the actor's decision is taken for constitutionally permissible reasons. Thus, unlike a procedural due-process claim, an equal-protection claim may assert injury to, not only Shows's interest in continued employment, but also the terms and conditions of that employment, and his prospects for future employment. *See Whiting v. Jackson State University,* 616 F.2d 116, 122 (5th Cir.1980); *Carmichael v. Chambers County Bd. of Ed.,* 581 F.2d 95, 97 (5th Cir. 1978) (per curiam)).[14] It is immaterial that Shows did not have a constitutionally protected property interest in his position as Acting Police Chief of the Town of Hayneville. The Constitution protects his right to be free from purposeful, race-based discrimination on the part of a prospective employer. *See Burns v. Gadsden State Community College,* 908 F.2d 1512, 1517–1518 (11th Cir.1990) (per curiam). This

right was clearly established at the time of the events in question. *See Busby,* 931 F.2d at 775–776 ("[I]t is clearly established that the equal protection clause affords . . . a right to be free from racial discrimination. The defendants therefore could have made no claim of qualified immunity under *Harlow* to a section 1983 claim predicated upon equal protection. Though it is unclear whether the district court in fact directed a verdict in favor of the individual defendants on the ground of qualified immunity for this section 1983 claim regarding racial harassment and discrimination, such a ruling clearly would have been erroneous.") (citation omitted).

Having determined that Shows's constitutional right to equal protection was clearly established, the court next considers whether the alleged violation is self-evident on the face of Shows's complaint. *See Rich v. Dollar,* 841 F.2d at 1564. The Eleventh Circuit imposes a "heightened pleading requirement" on a plaintiff when confronted with a motion to dismiss on the basis of qualified immunity. *GJR Investments, Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir.1998). The heightened standard requires a complaint provide "some factual detail . . . especially if we are to be able to see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred." *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993).

However, as this court explained in *Helton v. Hawkins,* 12 F.Supp.2d 1276, 1280–1281 (M.D.Ala.1998) (Thompson, J.), it is unclear whether the Eleventh Circuit § 1983 pleading standard is still constitutional. The Supreme Court has indicated that the role of the courts is not to fashion heightened requirements. *See Crawford–*

---

13. This claim may be brought independent of a claim under Title VII. *See Cross v. State of Alabama,* 49 F.3d 1490, 1507–1508 (11th Cir. 1995). Thus Shows's failure to bring a timely Title VII action does not preclude his equal-protection claim.

14. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

*El v. Britton,* 523 U.S. 574, ——, 118 S.Ct. 1584, 1595, 140 L.Ed.2d 759 (1998). Procedures exist, including Federal Rule of Civil Procedure 7(a) (entitling court to order a reply to the defendant's or a third party's answer), or Rule 12(e) (motion for a more definite statement), whereby the trial court may "protect[ ] the substance of qualified immunity," *id.* at ——, 118 S.Ct. at 1596, and public officials from harassing lawsuits, *cf. Oladeinde,* 963 F.2d at 1485, without the need to resort to heightened pleading rules. Nonetheless, even under the heightened pleading requirement, Shows's complaint is sufficient to withstand a motion to dismiss. His complaint is unusually detailed, setting forth with specificity, as will be explained below, facts alleging violation of a clearly established constitutional right against racial discrimination.

 Before trial, a plaintiff need make only a prima-facie showing of intentional discrimination in order to maintain a claim. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–256, 101 S.Ct. 1089, 1094–1095, 67 L.Ed.2d 207 (1981); *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715–716, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Hill v. Metropolitan Atlanta Rapid Transit Authority,* 841 F.2d 1533, 1538 (11th Cir. 1988). A prima-facie showing raises a rebuttable presumption that an employer has engaged in racially discriminatory practices. *See Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094.

 To prove a case of discrimination, a plaintiff may either present direct evidence of discriminatory intent, manifested by the discriminatory actions or remarks of his employer, or use the factors set forth in *McDonnell Douglas* to raise, by indirect evidence, an inference of discrimination. *Hill,* 841 F.2d at 1538; *see also Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1060–1061 (11th Cir.1994); *Howard v. BP Oil Co., Inc.,* 32 F.3d 520, 524 n. 2 (11th Cir.1994). "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption. Therefore, remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998) (citations omitted).

In the instant case, Shows's complaint alleges that Morgan informed the town council that Shows was "under investigation by the Alabama Bureau of Investigation for stealing drug money."[15] At the meeting held to vote upon Shows's appointment to permanent Police Chief, Mayor Morgan allegedly stated that he "could not work with Mr. Shows."[16] Morgan then cast the deciding vote to appoint Porter, an African–American, and not Shows, to be permanent Police Chief. Admittedly, none of these actions is direct evidence of race-based discrimination.

 However, as stated, Shows may prove discriminatory motive through indirect evidence as well. The *McDonnell–Douglas* scheme allocating the burden of proof in Title VII cases allows the plaintiff to establish, by a preponderance of the evidence, a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94. In order to satisfy the *McDonnell–Douglas* burden, Shows "need only prove by a preponderance of the evidence that [ ]he applied for and was qualified for an available position, that [ ]he was rejected, and that after [ ]he was rejected [defendants] either continued to seek applicants for the position, or, as is alleged here, filled the position with a[n African–American] employee." *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989), *superceded on other grounds by 42*

**15.** Complaint ¶ 14.

**16.** Complaint ¶ 10.

U.S.C.A. § 1981(b) (the 1991 Civil Rights Act). As noted, above, Shows alleges in his complaint that he applied and was qualified for the position of permanent Police Chief, and that, after he was rejected, an African–American who it appears had not even applied for the job got it. His complaint thus satisfies the criteria necessary to allege indirect evidence of racial discrimination and is thus sufficient to support an equal-protection claim, even under a heightened pleading standard.

### b. § 1981 Claim

██ Shows claims that Mayor Morgan discriminated against him because of his race in violation of § 1981. This section provides, in part, that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...." While § 1981 speaks in terms of the "same right enjoyed by white citizens," the Supreme Court has interpreted the provision to apply to whites as well as nonwhites. *See L.N. McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

██ Morgan has asserted qualified immunity as a defense to Shows's § 1981 claim. *See Johnson v. City of Fort Lauderdale,* 126 F.3d 1372, 1379–80 (11th Cir. 1997) (applied qualified-immunity defense to § 1981 claim); *see also Gonzalez v. Lee County Housing Authority,* 161 F.3d 1290, 1300 n. 35 (11th Cir.1998) (reaffirming holding in *Fort Lauderdale* ). The court will therefore consider whether the violation of Shows's rights under § 1981, as alleged in his complaint, was sufficiently clear at the time of the events at issue to withstand qualified immunity.

██ Section 1981 prohibits race discrimination in the making and enforcing of contracts and is a statutory remedy available in both the public and private sectors. *See Johnson v. Railway Express Agency,*

*Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Section 1981 permits claims for intentional racial discrimination in "the making, performance, modification, and termination of [employment] contracts," as well as "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C.A. § 1981(b).

██ As with a claim under the equal-protection clause, to maintain a claim under § 1981, Shows must allege facts demonstrating that Mayor Morgan intentionally discriminated against him. *See General Bldg. Contractors Assoc. v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *Washington v. Davis,* 426 U.S. at 246–48, 96 S.Ct. at 2050–52; *Baldwin v. Birmingham Bd. of Educ.,* 648 F.2d 950, 954 (5th Cir. Unit B Mar.1981). And, as with his equal-protection claim, Shows's § 1981 right was clearly established at the time of the events in question, and Shows has alleged in his complaint facts sufficient to establish a claim under § 1981.

### 2. Police Officer Tippins in His Individual Capacity

The only federal claim Shows has against Officer Tippins is his substantive-due-process claim for defamation. As already explained, Shows wishes to pursue this claim only as a state-law claim, not a federal claim.

### 3. Town of Hayneville

██ Of course, the qualified immunity defense does not apply to municipalities. Nevertheless, the court's qualified-immunity discussion is relevant because it traced the "contours" of Shows's rights under §§ 1981 and 1983. *See County of Sacramento v. Lewis,* 523 U.S. at —— n. 5, 118 S.Ct. at 1714 n. 5. The court determined that Shows had no procedural- or substantive-due-process right to his 'interim' appointment as Police Chief. Thus, for the same reasons that Shows has no viable procedural- and substantive-due-process

claims against Mayor Morgan and Officer Tippins in their individual capacities, he has no viable procedural- and substantive-due-process claims against the Town of Hayneville.

The court further determined that Shows's § 1983 equal-protection and § 1981 claims against Mayor Morgan and Officer Tippins in their individual capacities were "clearly established," *id.*, and thus were viable. The court now considers whether Shows may maintain those claims against Hayneville.

■ As it ends up, the court need not, at least for now, consider Shows's § 1983 and § 1981 claims separately. In *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), the Supreme Court held, first, that § 1983 provides the exclusive federal remedy against municipalities for the violation of the civil rights guaranteed by § 1981, and, second, that a municipality may not be held liable under a respondeat superior theory for violations of § 1981 but may only be held liable for violations resulting from an official "policy or custom." In other words, "section 1981 can provide no broader remedy against a state actor than section 1983." *Busby v. City of Orlando*, 931 F.2d 764, 771–72 n. 6 (11th Cir.1991). As a result, a lawsuit against a municipality under both § 1981 and § 1983 merges into a § 1983 claim only.

■ A municipality may not be sued under § 1983 for the acts of others: it is only responsible for its own acts. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691–694, 98 S.Ct. 2018, 2036–2038, 56 L.Ed.2d 611 (1978); *St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (plurality opinion). Shows may not sustain a § 1983 claim against the Town of Hayneville simply on the basis that Morgan and the town council were employed by the town. *See Monell*, 436 U.S. at 694, 98 S.Ct. at 2037; *see also Board of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) ("A municipality may not be held liable under § 1983 solely be-

cause it employs a tortfeasor. . . . We have consistently refused to hold municipalities liable under a theory of respondeat superior"). Shows must therefore establish that the city itself, through a government "policy or custom," caused the constitutional violation. *See Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–2038.

■ A municipality may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–2038. The court therefore begins by addressing whether the Town of Hayneville had a custom of refusing to appoint applicants for racially motivated reasons. In order to rise to the level of a custom, a practice must be "longstanding and widespread." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991); *see also Board of County Comm'rs v. Brown*, 520 U.S. at 403, 117 S.Ct. at 1388; *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. The plaintiff bears the burden of establishing such a custom. *See id.* Shows nowhere alleges that Hayneville had such a practice.

■ The court next turns to the policy question. Of course, policy is typically made by the city's official legislative body. A "municipal official who has 'final policymaking authority' in a certain area of the city's business may by his or her action subject the government to § 1983 liability when the challenged action falls within that authority." *City of Fort Lauderdale*, 923 F.2d at 1480; *see also Board of County Comm'rs v. Brown*, 520 U.S. at 403, 117 S.Ct. at 1388; *Praprotnik*, 485 U.S. at 123, 108 S.Ct. at 924; *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. State law informs whether an official has final policymaking authority, *see id.; see also Praprotnik*, 485 U.S. at 123, 108 S.Ct. at 924, and encompasses "not only the relevant positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law." *Man-*

*del v. Doe,* 888 F.2d 783, 793 (11th Cir. 1989).

A municipality may be liable for a single decision, made according to the rules, regulations and customs of the municipality, if the decisionmaker has final policymaking power. *See Pembaur v. Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) ("municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances"); *see also Praprotnik,* 485 U.S. at 123, 108 S.Ct. at 924 ("the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business"). However, identifying which official has final policymaking authority is not always straightforward. Such authority may be split between two or more different municipal organs, or a municipal organ may retain supervisory power to review the decisions of the council. *See Praprotnik,* 485 U.S. at 128–130, 108 S.Ct. at 927 (because mayor and aldermen's decision was subject to review by a Civil Service Commission, the mayor and aldermen did not have final policymaking authority); *but see Starrett v. Wadley,* 876 F.2d 808, 818–819 (10th Cir.1989) (where county delegated power to set employment policy to county assessor, with no meaningful avenues of review, then assessor's employment decisions constituted policy of county). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's decision, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformity with their policies." *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926. Here, Shows's complaint charges that Hayneville, acting through its final decision-mak-

ing body, the town council, intentionally discriminated against him. This allegation is sufficient because, if true, it would then follow that the town's "lawmakers ... whose edicts or acts may fairly be said to represent official policy[ ] inflict[ed] the injury." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–2038.

Admittedly, some courts have held that § 1981, as revised by § 101 of the Civil Rights Act of 1991, allows a direct cause of action against municipalities, and allows respondeat superior liability upon municipalities.[17] According to these courts, § 101 overruled *Jett. See Federation of African American Contractors v. City of Oakland,* 96 F.3d 1204, 1208–1209 (9th Cir. 1996) (discussing these cases and others). The court need not reach this issue at this time because the allegations in Shows's complaint satisfy the requirements of *Jett.*

### 4. *Mayor Morgan and Police Officer Tippins in Their Official Capacities*

To the extent Shows has sued Mayor Morgan and Officer Tippins in their official capacities he has essentially sued the Town of Hayneville *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (Official-capacity lawsuits are, "in all respects other than name, ... treated as a suit against the entity."). And to be sure, a plaintiff may sue a defendant in his official capacity, if such suit is not otherwise barred. But suing a defendant in such capacity is usually necessary only when a suit against the governmental entity itself is barred by the eleventh amendment to the United States Constitution. In such instances, a suit against governmental officeholders in their official capacities is the only effective way to bring the governmental entity into court and obtain relief. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (holding that there is an exception

---

17. Section 101 of the Civil Rights Act of 1991 added two new subsections to § 1981, one of which is arguably relevant here: subsection (c). Subsection 1981(c) provides:

"The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

to eleventh amendment immunity for actions seeking declaratory and injunctive relief against state officials for alleged violations of federal law). Here, however, there are no eleventh-amendment immunity issues presented. Therefore, while allowable, there is no need to maintain suit against Mayor Morgan and Officer Tippins in their official capacities.

### 5. *Statute of Limitations*

Sections 1981 and 1983 do not have their own statutes of limitations. Instead, the limitations period is informed by state law, while the date of accrual is determined by federal law. *See Beasley v. Alabama State Univ.*, 966 F.Supp. 1117, 1128 (M.D.Ala.1997) (Thompson, J.). Given the broad scope of § 1983, and the lack of precise state-law analogs to the diverse claims brought under its aegis, the Supreme Court concluded that, "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions," *Owens v. Okure*, 488 U.S. 235, 249–250, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989), so that "potential § 1983 plaintiffs and defendants ... can readily ascertain, with little risk of confusion or unpredictability, the applicable limitations period." *Id.* at 248, 109 S.Ct. at 580. All § 1983 actions commenced in Alabama are subject to the two-year limitations period set forth in the general provisions of the 1975 Code of Alabama § 6-2-38. *See Lufkin v. McCallum*, 956 F.2d 1104, 1106 (11th Cir.1992); *see also Okure*, 488 U.S. at 246 n. 9, 109 S.Ct. at 580 n. 9. Under federal law, accrual occurs " 'the moment the plaintiff knows or has reason to know of the injury that is the basis of [the] complaint.' " *Beasley*, 966 F.Supp. at 1128 (quoting *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir.1987)).

Moreover, claims under § 1981 are treated the same as those under § 1983. *Hill v. Metropolitan Atlanta Rapid Transit Authority*, 841 F.2d at 1545–1546. Thus, the above legal principles apply to § 1981 as well.

In the instant case, Shows's § 1981 and § 1983 claims are based upon the Town of Hayneville's failure to hire him. He filed this lawsuit on August 18, 1998. Under the applicable statute of limitations, he may not raise claims for acts which accrued before August 18, 1996. He was passed over for the position of permanent Police Chief at a hearing on December 19, 1996, which is within the two-year statute-of-limitations period. Shows's § 1981 and § 1983 claims are not time barred.

### C. *State–Law Claims*

As stated, Shows asserts the following state-law claims: libel and slander, invasion of privacy, and civil conspiracy.

### 1. *Invasion of Privacy*

Alabama law recognizes four distinct wrongs cognizable under the rubric of invasion of privacy: "(1) the intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity which violates the ordinary decencies; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and (4) the appropriation of some element of the plaintiff's personality for a commercial use." *Phillips v. Smalley Maintenance Servs., Inc.*, 435 So.2d 705, 708 (Ala.1983). Here, Shows charges the defendants with the first type: the intrusion upon the plaintiff's physical solitude or seclusion.

Alabama follows the Restatement (Second) of Torts, § 652B, definition of wrongful intrusion, which states that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." The wrongdoer's conduct must be "such that would cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Logan v. Sears, Roebuck & Co.*, 466 So.2d 121, 124 (Ala. 1985). However, to qualify as wrongful

intrusion, information need not be acquired "surreptitiously" or "clandestinely" from the plaintiff, *Phillips,* 435 So.2d at 709–710, and a defendant need not intrude upon a physical place. *See id.* at 711. "One's emotional sanctum is certainly due the same expectations of privacy as one's physical environment." *Id.*

In the instant case, Shows claims that Mayor Morgan and Officer Tippins undertook to smear his reputation by obtaining demeaning information from his mail and from government files.[18] These facts are sufficient to support a claim for invasion of privacy on the grounds that Shows has been shamed and humiliated as a result of Morgan's and Tippins's acts.

### 2. Civil Conspiracy

A civil conspiracy is "an 'agreement' or 'understanding' between two or more persons to accomplish some unlawful end, or some lawful end by unlawful means ... and includes an element of intent to injure or do wrong." *Allstate Indem. Co. v. Lewis,* 985 F.Supp. 1341, 1349 (M.D.Ala. 1997) (Thompson, J.); *see also First Bank of Childersburg v. Florey,* 676 So.2d 324, 327 (Ala.Civ.App.1996). "A civil conspiracy action focuses not on the conspiracy alleged, but on the wrong committed by virtue of the conspiracy. Conspiracy itself furnishes no civil cause of action." *Triple J Cattle, Inc. v. Chambers,* 621 So.2d 1221, 1225 (Ala.1993) (citations omitted).

Here, Shows asserts in his complaint a state-law civil conspiracy to commit libel and slander and an invasion of privacy. His civil-conspiracy claim is, at most, redundant as to his other state-law claims. The civil-conspiracy claim should therefore be dismissed as unnecessary.[19]

### 3. Statute of Limitations

The defendants contend that Shows's state-law claims are time barred. Shows's two remaining state-law claims— for libel and slander and invasion of privacy—have two-year limitation periods. Section 6–2–38(k) of the 1975 Code of Alabama provides that, "All actions of libel or slander must be brought within two years." And § 6–2–38(*l*), which covers invasion-of-privacy claims, provides that, "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years." It appears from Shows's complaint that some of the events that gave rise to these claims occurred within two years of when this lawsuit was filed on August 18, 1998.

### 4. Discretionary–Function Immunity

Mayor Morgan and Officer Tippins have asserted "discretionary-function immunity" as an affirmative defense to Shows's state-law claims. Discretionary-function immunity is a type, or subset, of "qualified immunity." As the Alabama Supreme Court explained in *Phillips v. Thomas,* 555 So.2d 81, 84 (Ala.1989), "Qualified or substantive immunity is available to a state officer or employee acting within the general scope of his authority, but only when certain circumstances are present." The court stated that it "has adopted the tort liability rule for public officers found in Restatement (Second) of Torts," which provides as follows:

"(1) Except as provided in this Section a public officer is not immune from tort liability.

"(2) A public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial or legislative function.

"(3) *A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if*

(a) *he is immune because engaged in the exercise of a discretionary function,*

---

**18.** Complaint, Third Cause of Action: Invasion of Privacy, ¶ 20.

**19.** The defendants do not contend that Shows has failed to state a claim for libel and slander.

(b) he is privileged and does not exceed or abuse the privilege, or

(c) his conduct was not tortious because he was not negligent in the performance of his responsibility."

*Id.* (quoting Restatement, § 895D, "Public Officers" (1977)) (emphasis in original). The court noted that, in "determining what is a discretionary function, we have recognized certain factors that may be considered," including the following:

"[1] the nature and importance of the function that the officer is performing; [2] the extent to which passing judgment on the exercise of discretion will amount necessarily to passing judgment on the conduct of a coordinate branch of government; [3] the extent to which the imposition of liability would impair the free exercise of discretion by the officer; [4] the extent to which the ultimate financial responsibility will fall on the officer; [5] the likelihood that harm will result to members of the public if the action is taken; [6] the nature and seriousness of the type of harm that may be produced; and [7] the availability to the injured party of other remedies and other forms of relief."

*Id.* (quoting *Barnes v. Dale,* 530 So.2d 770, 784 (Ala.1988)). Therefore, "a State officer or employee is not protected by discretionary immunity if in performing his discretionary functions he willfully, maliciously, fraudulently, or in bad faith injures someone." *Ex parte Davis,* 721 So.2d 685, 689 (Ala.1998).

 Discretionary-function immunity is not limited to state officers, however. The Alabama Supreme Court has extended it to municipal officials as well. *See Ex parte City of Birmingham,* 624 So.2d 1018, 1021 (Ala.1993) And it has been extended to city police officers by statute. *See* 1975 Code of Alabama § 6–5–338(a); *see also Sheth v. Webster,* 145 F.3d 1231, 1236 (11th Cir.1998).

 Here, Shows charges Mayor Morgan and Officer Tippins with invasion of privacy and libel and slander. It is not clear form the current record—that is, the

complaint—that the defendants' alleged improper actions fall within the range of their discretionary duties. But, assuming that their actions do, it can be reasonably inferred from the allegations in Shows's complaint that he is charging that the defendants acted in bad faith and with malice and willfulness.

 But more importantly, the Alabama Supreme Court has emphasized that the summary-judgment, not the dismissal-motion, stage is the preferred stage for resolution of qualified-immunity issues. In *Phillips v. Thomas,* the court explained:

"This Court has held that qualified immunity from suit for negligence arising out of a discretionary act is an affirmative defense which must be raised and proved by the defendant. As such, a plaintiff's complaint against a state official or employee, seeking damages for personal injury arising out of the negligent performance of the defendant's official duties, does state a valid cause of action, and, as such, will survive the defendant's motions to dismiss and for judgment on the pleadings, even if the defendant raises the affirmative defense of qualified immunity. *The summary judgment stage, then, becomes the step at which the court must determine whether the case should proceed forward, and at which the defendant must meet his burden of showing that the alleged negligence arose out of a discretionary or nonministerial act, in order to avail himself of qualified immunity from suit.*"

555 So.2d at 86 (emphasis added); *see also Sheth v. Webster,* 145 F.3d 1231, 1238 (11th Cir.1998) (quoting, with approval, part of the above language).

Therefore, at least for now, because the immunity issue is before this court on a dismissal motion, the court has not definitively held that Mayor Morgan and Officer Tippins are not entitled to discretionary-function immunity; but rather, the court, upon request, will revisit the issue at the summary-judgment stage.

### 5. *Notice–of–Claim Requirement*

■■ The defendants contend that Shows's state-law claims against the Town of Hayneville must be dismissed because he failed to comply, or even allege that he complied, with the state statutory provisions governing tort claims against municipalities. *See* 1975 Code of Alabama §§ 11–47–23, 11–47–192 (1993). Section 11–47–23 establishes that a claimant must notify the city clerk of a potential tort claim within six months of the accrual of his cause of action, while § 11–47–192 requires that a sworn statement describing the incident be filed with the clerk before any relief will be awarded. Shows does not contend that he complied with these provisions. His state-law claims against the Town of Hayneville must therefore be dismissed.

Moreover, because, as stated, to the extent Shows has sued Mayor Morgan and Officer Tippins in their official capacities he has sued Hayneville itself, the state-law claims against Mayor Morgan and Officer Tippins must be dismissed as well to the extent they are sued in their official capacities.

### III. *CONCLUSION*

For the foregoing reasons, the court holds that the defendants' motion to dismiss should be granted with prejudice as to the following: Shows's Title VII claim; his § 1983 procedural-due-process claim; his § 1983 substantive-due-process claim; his § 1983 equal-protection and § 1981 claims to the extent that Mayor Morgan and Officer Tippins are sued in their official capacities; his libel-and-slander and invasion-of-privacy claims to the extent Morgan and Tippins are sued in their official capacities; and his state-law civil-conspiracy claim. The motion should be denied as to the following: his § 1983 equal-protection and § 1981 claims to the extent Morgan and Tippins have been sued in their individual capacities and the Town of Hayneville has been sued at all; and his state-law libel-and-slander and invasion-of-privacy claims to the extent Morgan and Tippins have been sued in their individual capacities and the Town of Hayneville has been sued at all.

Accordingly, it is ORDERED that:

(1) The motion to dismiss, filed by defendants Joe Eddie Morgan, Gerald Tippins, and Town of Hayneville, Alabama, on November 6, 1998, is granted as follows:

(a) Plaintiff W. David Shows's Title VII claim is dismissed in its entirety.

(b) Plaintiff Shows's § 1983 procedural-due-process claim is dismissed in its entirety.

(c) Plaintiff Shows's § 1983 substantive-due-process claim is dismissed in its entirety.

(d) Plaintiff Shows's § 1983 equal-protection claim and § 1981 claim are dismissed to the extent that defendants Morgan and Tippins are sued in their official capacities.

(e) Plaintiff Shows's state-law civil-conspiracy claim is dismissed in its entirety.

(f) Plaintiff Shows's state-law libel-and-slander and invasion-of-privacy claims are dismissed to the extent defendants Morgan and Tippins are sued in their official capacities and defendant Town of Hayneville is sued at all.

(2) Said motion is denied as to the following:

(a) Plaintiff Shows's § 1983 equal-protection claim and § 1981 claim to the extent defendants Morgan and Tippins have been sued in their individual capacities and defendant Town of Hayneville has been sued at all.

(b) Plaintiff Shows's state-law libel-and-slander and invasion-of-privacy claims to the extent defendants

Morgan and Tippins have been sued in their individual capacities.